IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

CASTLE SENIOR LIVING, INC.,

        Plaintiff,                Case No.: 2:21-cv-01040-JPS

    v.

CITY OF DELAFIELD,

        Defendant.

---

## AMENDED COMPLAINT

---

Plaintiff, Castle Senior Living, Inc. ("Castle Senior Living") states for its Amended Complaint against the City of Delafield (the "City") as follows:

## INTRODUCTION

1.　　This is an action for damages brought pursuant to the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended ("FHA"), 42 U.S.C. § 3601, *et. seq.*, and Titles II and V of the Americans with Disability Act ("ADA"), 42 U.S.C § 12101, *et seq.*, as well as violations of state law, including Chapter 62 of the Wisconsin statutes (inclusive of, but not limited to, Section 62.23, Wis. Stats.).  The City intentionally and wrongfully denied Castle Senior Living's application for a conditional use permit ("CUP") to allow senior citizens with disabilities to live in a Community Based Residential Facility ("CBRF") – a facility to house senior citizens with disabilities - on the shores of Nagawicka Lake (the "Lake").

2.　　The City failed to provide reasonable accommodations to allow senior citizens with disabilities to live in a residential neighborhood. In fact, it provided no accommodations at all.  The City did not even provide the pretense of complying with its legal obligations to provide

1

accommodations, and it went out of its way to ignore its own ordinances to ensure senior citizens with disabilities could not live amongst the residents of Delafield.

3.      By failing to provide accommodations, the City violated its own zoning ordinances, state law and federal law.

4.      Castle Senior Living has substantial damages as a result of the City's actions, including, without limitation, moneys invested in the CBRF project, loss of future profits from the CBRF, and legal fees and related expenses.

<b><u>PARTIES</u></b>

5.      Castle Senior Living is a Wisconsin corporation with its principal place of business at 13050 W. Cleveland Ave, New Berlin, Wisconsin 53151.

6.      The City is a municipal body organized and existing under Wisconsin law in Waukesha County, and within the Eastern District of Wisconsin.  Upon information and belief, the City's principal office is located at 500 Genesee Street, Delafield, Wisconsin 53018.  The City is a public entity withing the meaning of the ADA, specifically 43 U.S.C. § 12131.

<b><u>JURISDICTION AND VENUE</u></b>

7.      Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as this matter arises under federal law.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events and omissions giving rise to this claim arose in this District.

<b><u>FACTUAL BACKGROUND</u></b>

9.      Castle Senior Living owns and operates senior living facilities in the State of Wisconsin.  These include CBRFs.

10.     Wisconsin law defines a CBRF as a place that is less restrictive than a skilled nursing home and that provides "care, treatment or services" to individuals with disabilities who

2

require up to 3 hours per week per resident of intermediate nursing care. (*See* Wis. Stat. §50.01(1g).) There is a detailed admission process to evaluate whether a resident's disability-related needs require a CBRF level of care. (*See, eg*., Wis. Adm. Code, §DHS 83.35.)

11.     The Castle Senior Living CBRF at issue here would, by definition, serve senior citizens with disabilities at the Property.

12.     In or about 2020, Castle Senior Living began evaluating whether to buy a property for sale along the Lake, in order to place a CBRF on the property.

13.     The property in question was located at 1807 Nagawicka Road, Delafield, Wisconsin (the "Property").

14.     Castle Senior Living ultimately entered into an agreement to purchase the Property from its current owner.

15.     One of the conditions of Castle Senior Living closing on the Property was its ability to obtain the City's approval for the CBRF on the Property.

16.     The CBRF should have presented the City with a relatively easy approval decision.

17.     The Property is zoned "RL-1," which permits residential use, and a CBRF is an allowed residential use.

18.     Section 52-142(g) of the Delafield Code of Ordinances expressly provides that CBRF's are permitted "in all districts," including those zoned RL-1, "subject to approval of the common council following recommendation of the plan commission."

19.     Given the clear language of the Ordinance, the City admits - through its Attorney and Planner – that a CBRF is a permitted use under RL-1 zoning.

20.     The City asserts, however, that under §52-142(g), Castle Senior Living needs a conditional use permit ("CUP") for the project.

21.     Although the City had the right to place reasonable conditions on any CBRF in this

3

"RL-1" zoning and require those conditions to be satisfied as part of approving a CUP, the City did not have the right to outright reject Castle Senior Living's CBRF, particularly on the basis that the City simply did not want senior citizens with disabilities living in this neighborhood on the Lake.

22.    Castle Senior Living submitted an application for a CUP to the City Plan Commission.

23.    On May 26, 2021, the City Plan Commission held a public hearing on the question of Castle Senior Living's CUP application for the CBRF.

24.    At the May 26 hearing, the City Attorney told the Plan Commission that the question before it was "…whether there's substantial evidence to establish conditions for the granting of the conditional use permit."

25.    The May 26 hearing included three hours of public comment, most of which opposed granting the CUP.

26.    The reasons for public opposition included concerns about surrounding property values, concerns about the burden on water and sewer systems, concerns about the CBRF blocking "sunset views," and concerns about traffic.

27.    A number of residents also expressed a desire that the subject lot be sub-divided and three houses be built instead of the CBRF.

28.    The City Plan Commission denied the application without requesting any additional information from Castle Senior Living regarding concerns raised by the public.

29.    For Example, the City did not seek any input from city departments or outside experts on the impact of the CBRF on sewer and water.

30.    Likely because it lacked any data about resident's concerns on the project – because it never asked for any - the City Plan Commission did not even bother to discuss or

4

evaluate what terms, conditions or reasonable accommodations it could or should impose on the CBRF project.

31.     Rather than evaluate data and seek reasonable accommodations from Castle Senior Living and for this CBRF, members of the Plan Commission simply tallied up the public vote it heard at the meeting, and voted the same way. As Board Member Robert Weiler stated on the record: "My tally shows there were 32 against and 8 for. And to me, I definitely want to take that into consideration."

32.     Another Board member stated that, notwithstanding the City's own ordinances which permitted this CBRF use, the Commission was simply opposed to the very idea of a CBRF "on the lake:"

> I guess I'd like to start, why does it have to be here, at the lake, on the lake?  Because we can find other areas for a CBRF…. So for that reason, I just -- I can't approve something like this, even though I'm for a CBRF in our community, definitely am, just not in this location.  I just don't think it's the right use for it.

33.     In the end, the City Plan Commission denied Castle Senior Living's CUP application, and did so without considering or imposing any terms, conditions or reasonable accommodations on Castle Senior Living.

34.      As no conditions were requested or imposed, Castle Senior Living could not – and did not – refuse to comply with terms, conditions or reasonable accommodations.

35.     Rather, the City Plan Commission simply rejected the CUP because it did not want a CBRF with senior citizens with disabilities in this residential neighborhood.

36.     In so doing, the City ignored and violated its own municipal code, including Ordinance § 52-142(g).

37.     The City also violated state law. Wisconsin Statutes, Chapter 62, also known as "Act 67," prohibits the City from issuing a blanket denial of an already-approved use, such as the CBRF.  Rather, Act 67 limits the City to placing reasonable terms and conditions on such a use.

5

38.     Specifically, Act 67 requires that a City "shall" grant a CUP for an approved use, unless it imposes restrictions and conditions that are reasonable and narrowly-tailored, and the applicant fails to comply with such conditions:

> a. If an applicant for a conditional use permit meets or agrees to meet all of the requirements and conditions specified in the city ordinance or those imposed by the city zoning board, the city **shall grant** the conditional use permit. *Any condition imposed must be related to the purpose of the ordinance and be based on substantial evidence.*
>
> b. The requirements and conditions described under subd. 2. a. *must be reasonable and, to the extent practicable, measurable and may include conditions such as the permit's duration, transfer, or renewal.* The applicant must demonstrate that the application and all requirements and conditions established by the city relating to the conditional use are or shall be satisfied, both of which must be supported by substantial evidence. The city's decision to approve or deny the permit must be supported by substantial evidence.

Wis. Stat. §62.23(7)(de) (emphasis added).

39.     As such, the "substantial evidence" standard the City Attorney told the Plan Commission applied to its decision to deny the CUP was wrong. The Commission had a duty to either impose reasonable requirements and conditions on the CUP application, or grant the CUP.

40.     Under the statute, "substantial evidence" is not relevant until after the City imposes reasonable conditions.

41.     For example, once such conditions are imposed, the applicant must show "substantial evidence" that it will comply with reasonable conditions. Similarly, the City must show "substantial evidence" supporting denial of a CUP for failure to meet reasonable conditions. However, the City has to *actually give reasonable conditions* before reaching the "substantial evidence" issue.

42.     Castle Senior Living raised these issues with the City Common Council and requested that it reject the Plan Commission's recommendation to deny this CUP for this CBRF for senior citizens with disabilities.

43.     As with the Plan Commission, the City Common Council summarily rejected

6

Castle Senior Living's proposal.

44.     Again, and as with the Plan Commission, the City Common Council did not offer Castle Senior Living any appropriate requirements, conditions or reasonable accommodations for issuance of a CUP, as provided by statute.

45.     Rather, the City Common Council, like the Plan Commission, simply denied the CUP, even though this CBRF was an approved use on the Property per City zoning ordinances.

46.     Like the Plan Commission, the City Common Council determined that it simply did not want Castle Senior Living's CBRF – which was to provide residences and services to senior citizens with disabilities – in this residential neighborhood at all.

47.     In so doing, the City (via its Plan Commission and City Common Council) decided it would ignore its own zoning ordinances, Act 67, and the federal law cited below, in order to prevent senior citizens with disabilities from living in this residential neighborhood along the shores of the Lake.

48.     Because the City flatly and summarily rejected a CBRF on the Property, Castle Senior Living failed to satisfy a condition for purchasing the Property, and the Property's owner cancelled the transaction.

49.     But for the City's decision to discriminate against senior citizens with disabilities and deny Castle Senior Living's CUP, Castle Senior Living would have been able to purchase the Property, would have purchased the Property, and would have constructed and maintained a CBRF – an approved use under the City's zoning of this Property – to serve senior citizens with disabilities and provide them a place to live in the Property's neighborhood.

50.     The City's denial of the CUP, prevention of this land purchase, and construction of this CBRF project for senior citizens with disabilities has damaged Castle Senior Living in an amount to be determined at trial, but which includes millions of dollars of costs, expenses, and

7

lost future profits.

## COUNT I – VIOLATION OF FHA

51.     Castle Senior Living realleges and incorporates by reference the allegations of the foregoing paragraphs.

52.     The proposed CBRF is a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

53.     The proposed residents of the CBRF are "handicapped" within the meaning of 42 U.S.C. § 3602(h).

54.     Since the City Common Council is vested with the final authority for zoning and CUP decisions, the Council's actions described above constitute the policy of the City and were taken under the color of state law.

55.     The City's above-described actions constitute:

a.      Discrimination in the sale or rental, or otherwise making unavailable or denying a dwelling because of disability in violation of the FHA;

b.      A refusal to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford a person an equal opportunity to use and enjoy a dwelling in violation of the FHA; and,

c.      Interference with the rights of person in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged persons with disabilities in the exercise of enjoyment of rights granted or protected by the FHA.

56.     The City's above-described actions were intentional and taken with willful disregard for the rights of Castle Senior Living and its clientele of disable senior citizens.

57.     Castle Senior Living is an aggrieved person, as defined by 42. U.S.C. § 3602(i), who has suffered economic loss, emotional distress and/or loss of civil rights as a result of the

8

City's conduct.

## <u>COUNT II – VIOLATION OF ADA</u>

58.    Castle Senior Living realleges and incorporates by reference the allegations of the foregoing paragraphs.

59.    The prospective residents of the proposed CBRF are "qualified individuals with a disability" under the meaning of the ADA.

60.    The City is a "public entity" under the ADA.

61.    The City's above-described actions are "services, programs or activities" under the ADA.

62.    The City's above-described actions:

a.    Constitute discrimination in violation of Title II of the ADA;

b.    Exclude qualified individuals with disabilities from participation and deny them the benefits of the services, programs, or activities of a public entity on the basis of disability in violation of Title II of the ADA;

c.    Afford qualified individuals with disabilities an opportunity to participate in or benefit from the services of a public entity that are not equal to those afforded others in violation of Title II of the ADA;

d.    Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others who received the aid, benefit, or service in violation of Title II of the ADA; and,

e.    Fail to make reasonable modifications in policies, practices, or procedures necessary to avoid discrimination on the basis of disability in violation of Title II of the ADA.

63.    The City's above-described actions were intentional and taken with willful

9

disregard for the rights of Castle Senior Living and the senior citizens with disabilities it planned to serve.

## COUNT III – VIOLATION OF ACT 67

64.     Castle Senior Living realleges and incorporates by reference the allegations of the foregoing paragraphs.

65.     Act 67 (codified at Section Chapter 62 of the Wisconsin statutes) does not allow the City to reject an already-approved use of a property such as this Property.

66.     Act 67 allows a city to impose conditions on the issuance of a conditional use permit for such an approved use, but only if such conditions are reasonable.

67.     Act 67 otherwise requires that a City "shall" grant a conditional use permit for such an approved use.

68.     Here, the CBRF is an approved use under the City's ordinances.

69.     The City, however, flatly denied this approved-used conditional use permit proposal by Castle Senior Living.

70.     The City did not even request any conditions on the approved use, let alone reasonable conditions.

71.     Rather, the City simply denied the request in violation of its own ordinances, without imposing any conditions whatsoever.

72.     The City's denial of Castle Senior Living's requested conditional use permit is a violation of Castle Senior Living's rights under state law including, without limitation, Act 67.

73.     Castle Senior Living has been damaged by the City's violation of state law in an amount do be determined at trial.

74.     Castle Senior Living served a Notice of Claim on the City pursuant to Wis. Stat. § 893.80 on September 7, 2021, and the City did not respond to the Notice of Claim.  As such,

10

Castle Senior Living has fulfilled its obligations to provide such a Notice of Claim under state law, and the claim is deemed denied by the City, and is ripe for litigation.

WHEREFORE, Castle Senior Living, Inc. requests judgment against the City of Delafield as follows:

(1)     in an amount to be determined at trial;

(2)     for all exemplary and/or punitive damages as allowed by law;

(3)     for its costs and reasonable attorneys' fees incurred in this matter; and

(4)     for all further relief to which it is legally or equitably entitled, or which this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Dated this 31st day of January, 2022.

Respectfully submitted,

ATTORNEYS FOR PLAINTIFF, CASTLE SENIOR LIVING, INC.

s/ Michael D. Huitink
Michael D. Huitink
Wisconsin State Bar No. 1034742
Willem J. Noorlander
Wisconsin State Bar No. 1033089
Stephanie Hanold Anacker
Wisconsin State Bar No. 1051845

SBR LAW GROUP LLC
675 N. Barker Road, Suite 300
Brookfield, WI 53045
Phone: 262-513-3315
Fax:    262-513-3318
Email: mhuitink@sbrlaw.us
Email: wnoorlander@sbrlaw.us
Email: sanacker@sbrlaw.us

Robert Theine Pledl
Wisconsin State Bar No. 1007710

11

DAVIS & PLEDL SC
1433 N Water Street, Suite 400
Milwaukee, WI 53202
Phone: 414-488-1354
Fax:    414-978-7282
Email:  rtp@davisandpledl.com